## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

### No. 5:11-CV-763-FL

| | |
|---|---|
| MICHAEL S. PRINCE, SR., | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-16, DE-18] pursuant to Fed. R. Civ. P. 12(c). Claimant Michael Prince, Sr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB").[1] Claimant filed a reply to Defendant's motion and, with leave of court, Defendant has filed a surreply. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings, and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 16,

---

[1] This M & R only addresses Petitioner's denial of period of disability and DIB as the ALJ's opinion was limited to review of these two issues. The parties' briefing refers to Petitioner's application for Supplemental Security Income ("SSI") as well, but this matter was not before the ALJ and is not discussed here on review.

2009, alleging disability beginning June 30, 2008. (R. 11). His claim was denied initially and upon reconsideration. (R. 11). A hearing before the Administrative Law Judge ("ALJ") was held on May 25, 2011, at which Claimant was represented by counsel and a vocational expert ("VE") testified. (R. 45-49). On June 2, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 11-19). Claimant then requested a review of the ALJ's decision by the Appeals Council. (R. 7). On October 28, 2011, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision. [DE-1].

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," *i.e.,* currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) failure to classify Claimant's ulcerative colitis (inflammatory bowel disease) as a severe impairment; (2) improper evaluation of a treating physician's opinion; (3) improper assessment of Claimant's credibility; (4) improper assessment of Claimant's residual functional capacity; and (5) improper characterization of state agency examining consultant's findings. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 9-12 [DE-17]; Pl.'s Rep. Mem. ("Pl.'s Rep.") [DE-20].

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant was

3

"not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 13). Next, the ALJ determined Claimant had the following severe impairments: sclerosing cholangitis and degenerative disc disease. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[2] that has the following physical limitations: occasional stooping, frequent but not constant overhead reaching with left arm, and sitting and standing at will. (R. 14). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 16). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a bus driver, truck driver or loader. (R. 17). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 18).

_____

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 44 years old and unemployed. (R. 26). Claimant is a high school graduate and has taken some college courses. (R. 26). Claimant was last employed with the City of Durham for approximately two years, where he was a bus driver. (R. 27). Claimant's past work experience also includes working for UPS for over 15 years. (R. 27). He had various positions for UPS which included working as a loader, truck driver, and in other freight delivery jobs. (R. 27).

Claimant explained several medical conditions to support his disability claim and his inability to work full-time. Claimant testified that he is unable to work due to sclerosing cholangitis (liver disease), back pain, and sudden bowel movements attributable to ulcerative colitis. (R. 28, 30, 33). Claimant testified that he was diagnosed with sclerosing cholangitis in 2008. (R. 28). Claimant testified he is extremely fatigued from the sclerosing cholangitis and medicine he takes for his back pain, Gabapentin. (R. 30). Claimant also testified that he feels fatigued even on days he does not take his medicine. (R. 43). Claimant testified that he gets up in the morning at seven o'clock for a brief period to get his children on the school bus and then goes back to sleep until at least one o'clock in the afternoon. (R. 28-29). He gets up briefly when the children arrive home from school and then goes back to sleep for a couple more hours in the afternoon until his wife arrives home at approximately six o'clock. (R. 36).

Claimant testified that he is unable to work due to pain associated with his back and attendant pain in his left leg. (R. 31). Claimant testified he also has numbness and coldness in his left leg. (R. 31). Claimant testified he has had his back pain since early 2008 while he was still working as a bus driver in Durham. (R. 31). He takes Gabapentin daily and also receives epidural injections

5

about once a year to control the pain in his back. (R. 31). Claimant testified that he cannot sit for long periods of time. (R. 41). Claimant testified he experiences the most pain when he is sitting and prefers to be upright. (R. 32). Claimant testified that he did not think he is able to perform a forty-hour per week job even if he could sit and stand as needed. (R. 43). Claimant testified that he can carry a gallon of milk across the room, but would be uncomfortable carrying anything heavier. (R. 33). Claimant testified he does not carry groceries into the house, but he does fold clothes coming out of the dryer and sweeps the floor at his home. (R. 33, 35, 37).

Lastly, Claimant testified to having uncontrolled bowel movements approximately six times per day which require him to use the restroom urgently. (R. 35). Claimant testified he had experienced sudden bowels when he worked as a truck driver. (R. 34).

## III. Vocational Expert's Testimony at the Administrative Hearing

Dr. Wells-Brown testified as a VE at the administrative hearing. (R. 45-49). After the VE's testimony regarding Claimant's past work experience, (R. 46), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform work involving lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting and standing and walking for at least six hours, stooping occasionally, and reaching overhead with the left arm frequently. (R. 46). The VE testified in the negative and stated that only the Claimant's prior supervisory position would be within those limitations. (R. 46). The VE testified further that jobs existed in the national and regional economies which the hypothetical individual could perform, including the following: (1) merchandise marker (DOT #209.587-034); (2) sales attendant (DOT

6

#299.677-010); and (3) cashier (DOT #211.462-010). (R. 47). Second, the ALJ asked the VE if positions would be available if the hypothetical individual posed in hypothetical one needed to alternate sitting and standing at will, likely spending most of the day standing. (R. 47). The VE testified the cashier position would be the only available position from the previously stated positions, but that other available jobs would include a counter attendant (DOT #311.477-014) and a flatware wrapper (DOT #318.687-018). (R. 47-48). When asked by Claimant's counsel whether the jobs listed would allow for bowel problems requiring 20 to 30 minute breaks six times per day, the VE responded in the negative. (R. 48-49). When further asked by the ALJ whether absence from work four days or more per month would preclude unskilled work, the VE responded in the affirmative. (R. 49).

## DISCUSSION

## I. The ALJ's failure to classify Claimant's bowel condition as a severe impairment is not reversible error.

Claimant contends the ALJ erred in failing to classify Claimant's ulcerative colitis as a severe impairment. Pl.'s Mem. at 9. Moreover, Claimant alleges that if the ALJ had identified his bowel condition as a severe impairment, the ALJ would have concluded the Claimant was disabled at step five. *Id.* This court disagrees.

The ALJ did not expressly find that Claimant's ulcerative colitis was not severe, but rather only listed Claimant's sclerosing cholangitis and degenerative disc disease as severe impairments. (R. 13). Based on this finding, the ALJ continued to step three. "The issue, however, is not whether the ALJ, upon making a severity finding as to certain impairments, failed to make an express determination as to other impairments or improperly characterized the severity of other impairments.

7

Rather, the court's concern is whether the allegedly ignored or mischaracterized impairment at step two of the sequential evaluation process is considered in subsequent steps." *See Page v. Astrue*, No. 5:11-CV-590-FL, 2012 U.S. Dist. LEXIS 149392, at *21, 2012 WL 48889597, at *7 (E.D.N.C. Sept. 20, 2012); *see Tarpley v. Astrue*, No. 5:08-CV-271-FL, 2009 U.S. Dist. LEXIS 45685, at *5-6, 2009 WL 1649774, at *2 (E.D.N.C. June 1, 2009) (finding no reversible error "where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps").

Claimant faults the ALJ for making a "single, misleading reference to [Claimant's] ulcerative colitis" and asserts that this does not satisfy the "consideration" required by statute because the ALJ does not explain her conclusion. Pl.'s Rep. at 2. The ALJ is required to consider all the evidence in the record when making a disability determination, *see* 20 C.F.R. § 404.1520(a)(3), but the ALJ is not required to discuss all evidence in the record. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating there is no "rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as [it] . . . is not a broad rejection"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (explaining that the ALJ need not discuss every piece of evidence in making a credibility determination). Indeed, "[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). Rather, the ALJ must "provide [this court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

8

The court finds that the ALJ adequately considered Claimant's ulcerative colitis in later steps of the sequential evaluation. Here, the ALJ specifically found Claimant satisfied the severity requirement at step two of the process by finding that he had two "severe" impairments – sclerosing cholangitis and degenerative disc disease. (R. 13). The ALJ then discussed and evaluated evidence concerning Claimant's ulcerative colitis in her subsequent RFC analysis, noting the following: (1) that Claimant was diagnosed by colonoscopy in September 2008 with ulcerative colitis, but that the condition remained in remission as stated in Dr. Smith's December 2010 follow-up report; (2) that in Claimant's consultative physical examination in March 2010, Dr. Samia assessed that Claimant had colitis by history; and (3) that in May 2011, Dr. Smith reported that Claimant needed to take unscheduled breaks four to six times a day during the workday for 20 to 30 minutes each and be absent from work at least four days per month. (R. 15, 16). The ALJ specifically summarized the treatment notes of Dr. Samia and Dr. Smith, a liver physician who Claimant saw on several occasions between 2008 and 2010. Even though Dr. Smith stated in May 2011 that Claimant would need frequent breaks at work, the ALJ found Dr. Smith's functional assessment of Claimant's work ability to be not credible. The ALJ gave little consideration to Dr. Smith's May 2011 functional assessment because the ALJ found that determination to be inconsistent with Dr. Smith's own treatment records. (R. 17). In fact, the treatment records provide little evidence to support the ulcerative colitis being a severe impairment because the records frequently state that Claimant himself reports normal bowel habits, is asymptomatic, and the disease is in remission. (R. 203, 204, 208, 365, 367, 373, 374). The record lacks evidence showing that this condition in fact affects Claimant's ability to work and Claimant cites none besides Dr. Smith's May 2011 opinion and his own testimony. Given that the ALJ did not find Dr. Smith's statements as to Claimant's limitations

9

credible, that leaves only a *diagnosis* of ulcerative colitis, which alone is not enough to prove disability. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (stating the diagnosis of a condition is not enough to prove disability, "[t]here must be a showing of related functional loss"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis . . . says nothing about the severity of the condition"). Accordingly, the ALJ's summary of Claimant's medical history, which included the aforementioned references to ulcerative colitis, allows this court "to conclude that [the ALJ] considered [Claimant's] medical condition as a whole," and as such, complied with the regulation requirements set out in 20 C.F.R. § 404.1520(a)(3). *Dyer*, 395 F.3d as 1211. Substantial evidence supports the ALJ's finding that Claimant's ulcerative colitis is not a severe impairment. *Mastro*, 270 F.3d at 176 (stating that under the substantial evidence standard, the court is not to re-weigh conflicting evidence or substitute its own judgment for that of the ALJ).

## II.    The ALJ properly evaluated the opinion of Claimant's treating physician.

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's gastroenterologist at Duke Liver Clinic, Alastair Smith, MB, ChB.[3] Pl.'s Mem. at 9-11. This court disagrees.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*;

---

[3] Dr. Smith holds the degree equivalent to that of a M.D. and his qualifications are not disputed.

10

*see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. § 404.1527(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. ("S.S.R.") 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

The medical opinion at issue appeared in an untitled two-page questionnaire dated May 24, 2011 regarding Claimant's physical abilities and limitations. (R. 390-91). First, Dr. Smith indicated that Claimant suffered primarily from sclerosing cholangitis and secondarily from ulcerative colitis.

11

(R. 390). Following the listing of these medical conditions, Dr. Smith answered four questions, three of which only solicit "yes" or "no" responses. *Id.* First, Dr. Smith noted that Claimant's complaints of severe fatigue are consistent with these two diagnoses, as is his complaint of unpredictable and urgent bowel movements. *Id.* Second, Dr. Smith opined that as a result Claimant would need to take four to six unscheduled breaks during the eight-hour workday for 20 to 30 minutes each. *Id.* Third, Dr. Smith estimated Claimant would have to miss more than four days of work each month due to his medical conditions. *Id.* Following these responses, Dr. Smith was asked to explain his assessment whereby he simply referred back to comments on the first page of the questionnaire and spoke briefly of how the two listed medical conditions are pre-malignant conditions which increase the risk of certain cancers. (R. 391). Dr. Smith provided no elaboration into his clinical assessments or test results over the years of treating Claimant which support the medical opinion at issue, nor do his treatment notes support these responses. (R. 391).

The ALJ acknowledged the length, frequency, nature and extent of Claimant's treatment relationship with Dr. Smith for a liver evaluation and follow-up via reference to his June 2008, January 2009, June 2010 and December 2010 progress reports. (R. 14, 203, 204, 212, 213, 365, 366, 367, 373, 374). Additionally, the ALJ noted that Dr. Smith is in fact a liver specialist. (R. 14, 16). However, the ALJ did not accord Dr. Smith's opinion controlling weight, explaining that

> As for the opinion evidence, the undersigned does not find Mr. Smith's determinations credible with regard to the claimant's ability to do work-related activities. Objective medical findings or treating progress notes of record *do not support his conclusions*. The records indicate that the claimant is now being seen once a year and has not had any recent exacerbations. Records from Duke University Hospital show that the claimant's condition is stable and asymptomatic with his only complaint being fatigue. Mr. Smith's assessment is over-restrictive, and thus *inconsistent*. Accordingly, the undersigned does not accept Mr. Smith's conclusion with regard to the claimant's residual functional capacity.

12

(R. 17) (emphasis added).

First, where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(d)(2). However, form reports such as questionnaires are arguably entitled to little weight due to the lack of explanation. *See Nazelrod v. Astrue*, No. BPG-09-0636, 2010 U.S. Dist. LEXIS 77379, at \*16, 2010 WL 3038093, at \*6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added). Also, while statements concerning an individual's inability to work are reserved to the Commissioner, such statements must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. § 404.1527(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at \*5, 1996 WL 374183, at \*2 (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner").

Next, there is substantial evidence in the record supporting the ALJ's conclusion that Dr. Smith's treatment records do not support the extreme physical limitations of frequent and extended breaks described in his questionnaire. In particular, his treatment records from 2008 to 2010 include the following findings: (1) normal bowel habits based on reports from the Claimant (R. 207, 365, 373); (2) no symptoms present in Claimant for ulcerative colitis (R. 203, 204, 207, 208, 365, 373); (3) ulcerative colitis in remission (R. 365); (4) a stable clinical course for the Claimant (R. 204, 374); and (5) no clinical complications raising concern. (R. 367). These statements about symptoms and the course of the disease in the treatment records relate to Claimant's physical functioning and

13

highlight the inconsistency between Dr. Smith's May 2011 opinion and his treatment notes as the ALJ indicated. The ALJ does not dispute the presence of ulcerative colitis as diagnosed in the 2008 colonoscopy that Claimant underwent, but the ALJ observed that Dr. Smith's treatment notes do not indicate symptoms stemming from ulcerative colitis that support Dr. Smith's May 2011 opinion as to Claimant's physical limitations. *See Gross*, 785 F.2d at 1166 (stating the diagnosis of a condition is not enough to prove disability, "[t]here must be a showing of related functional loss").

Dr. Smith's May 2011 opinion is also inconsistent with other evidence of record. Physical examination by Dr. Melissa Teitelman in 2008, another physician in the gastroenterology division at Duke University, revealed findings similar to those of Dr. Smith, including Claimant being asymptomatic as it relates to ulcerative colitis. (R. 207, 208). Medical records from Claimant's treating physicians simply lend no support to the physical limitations suggested by Dr. Smith. Additionally, Claimant himself testified and reported in certain medical records that he is able to fix light meals, fold clothes, sweep the floor, read to his children, and take them to the bus stop. (R. 29, 32, 36, 37, 310). The ALJ certainly recognized Claimant's symptom of fatigue, but it is proper consideration for the ALJ when determining the weight to accord a medical opinion to consider the Claimant's daily activities. *See* S.S.R. 96-2p, 1996 SSR LEXIS 9, at *7, 1996 WL 374188, at *3. Such daily activities suggest Claimant is not subject to the extreme physical limitations outlined in Dr. Smith's opinion.

The absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Smith's opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making her decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Smith's opinion

14

and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 1999 U.S. App. LEXIS 307, at
*7, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) ("An ALJ's determination as to the weight to be
assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ
has dredged up specious inconsistencies or has not given good reason for the weight afforded a
particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within
her discretion in not giving controlling weight to Dr. Smith's opinion.

**III.    The ALJ properly assessed Claimant's credibility.**

Claimant contends the ALJ improperly evaluated his credibility. Pl.'s Mem. at 12.
Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation
of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these
regulations, "the determination of whether a person is disabled by pain or other symptoms is a
two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether
Claimant has a medical impairment which could reasonably be expected to produce the pain or
other symptoms alleged. *Id.; see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL
374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity
and persistence of the pain or other symptoms, and the extent to which each affects a claimant's
ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including
objective medical evidence, *i.e.,* medical signs and laboratory findings, medical history, a
claimant's daily activities, the location, duration, frequency and intensity of symptoms,
precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any
pain medication, treatment, other than medication, for relief of pain or other symptoms and
functional restrictions. *Id.; see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS

15

4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the Claimant's argument hinges on the second prong of the relevant test as the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 16). Claimant contends that the ALJ improperly found that some of Claimant's daily activities were inconsistent with his symptoms and restrictions. Instead, Claimant asserts that these activities are "intermittent activities of short duration" and therefore, not inconsistent with the symptoms that Claimant describes. Pl.'s Mem. at 12.

A review of the record, including the hearing transcript, fails to substantiate this claim. In evaluating a claimant's credibility, the ALJ has the responsibility to draw inferences from, and resolve conflicts in, the record. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (citing *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A Claimant challenging the ALJ's exercise of that authority, "must show that the ALJ either ignored crucial portions of the record or that his credibility finding was patently unreasonably given the evidence in the record." *Hancock v. Astrue*, No. 1:09-CV-87, 2012 U.S. Dist. LEXIS 52697, at *32, 2012 WL 1267888, at *11 (M.D.N.C. Apr. 16, 2012). It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994)

("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations.").

In this case, Claimant makes no such showing. In reaching her conclusion, the ALJ explained the inconsistencies she found between Claimant's allegations and the medical evidence. (R. 14-16). The ALJ considered Claimant's numerous subjective complaints associated with his severe impairments and other non-severe medically determinable conditions, including his fatigue, medication side effects, lifting and sitting limitations, and chronic back and shoulder pain. (R. 16). The ALJ found that Claimant's subjective complaints were not fully credible as his "activities are inconsistent with his allegations of debilitating symptoms." *Id.* In reaching her conclusion, the ALJ discussed at length medical records concerning Claimant's back condition, sclerosing cholangitis and attendant liver issues, fatigue and ulcerative colitis. (R. 14-16). With respect to Claimant's back condition, the ALJ noted that the Claimant received conservative treatment of the condition through steroid injections and that these injections helped to alleviate Claimant's pain significantly, even producing periods of no pain. (R. 15, 357, 361, 327, 387); *see Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *Farrior v. Astrue*, No. 7:10-CV-164-FL, 2011 U.S. Dist. LEXIS 81863, at *14, 2011 WL 3157150, at *5 (E.D.N.C. July 26, 2011) (holding an ALJ may consider the type of treatment received in evaluating a claimant's subjective complaints). Additionally, Claimant's treatment in 2010 for his back pain indicated that Claimant could rise from a seated to standing position without difficulty and had reasonable range of motion, flexion, and extension. (R. 15, 385, 311). With respect to Claimant's remaining conditions, the ALJ noted that the ulcerative colitis remained in remission and that Claimant was asymptomatic of

17

sclerosing cholangitis and continued to do well from a liver standpoint. (R. 14, 15, 203, 204, 365, 373). The fatigue was noted as being disabling at times, but variable in its course. (R. 14, 365). Additionally, Claimant has long intervals between visits with his liver specialist suggesting the condition is stable. (R. 16, 212, 203, 252, 365, 373).

The ALJ found that Claimant's activities of daily living were inconsistent with his allegations of disabling pain, fatigue, and medication side effects. *See Mickles*, 29 F.3d at 921 (stating "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life"). Such activities include fixing light meals, shopping, driving, watching television, reading, performing some sweeping, folding clothes and taking his children to the bus stop. (R. 16, 29, 32, 36, 37, 310); *see Johnson*, 434 F.3d at 658 (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Claimant testified to these activities and also reported these activities to physicians. (R. 29, 32, 36, 27, 310). A review of Claimant's medical records and daily activities summarized by the ALJ confirms the existence of a substantial conflict between Claimant's statements regarding pain and physical limitations and other relevant evidence. However, Claimant has failed to show that the ALJ's credibility finding was patently unreasonable based on this evidence.

To the extent that the ALJ detailed the relevant facts underlying her finding that Claimant's testimony was not fully credible, her credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported

18

by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

## IV. The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Specifically, Claimant asserts his RFC should include the need for four to six breaks of 20 to 30 minutes per day, the need for more than four absences from work per month, and no prolonged sitting or standing because of back and leg pain. Pl.'s Mem. at 12. The court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at \*5, 1996 WL 374184, at \*1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at \*14 , 1996 WL 374184, at \*5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other

19

evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7. Furthermore, the RFC assessment must "consider and address medical source opinions," and if it "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

The ALJ considered Claimant's subjective complaints and Claimant's medical history. The ALJ's decision indicates that she considered all relevant evidence before determining Claimant maintained the RFC to perform light work except occasional stooping, frequent but not constant overhead reaching with left arm, and sitting and standing at will. As discussed earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to the ulcerative colitis, sclerosing cholangitis, and back pain. Moreover, the ALJ's review of Claimant's medical conditions includes consideration of Dr. Smith's May 2011 opinion, but there was no other evidence before the ALJ warranting such a restriction. (R. 203, 204, 365, 373, 374). While Claimant contends the RFC is not accurate because the ALJ did not accept the Dr. Smith's limitations, as detailed above, the court finds the ALJ's decision not to give controlling weight to Dr. Smith's opinion was properly within the ALJ's discretion. As such, Claimant's contention that the RFC should have included the additional limitations in Dr. Smith's opinion is of little merit. (R. 17). The ALJ's RFC assessment is also in accord with the physical RFC assessment found in the record. (R. 314-317); *see* 20 C.F.R. § 404.1527 ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation."). Finally, in compliance with SSR 96-8p and as discussed in detail above, the ALJ discussed her resolution of the declarations by Claimant's treating physician that were inconsistent with the medical evidence

20

as a whole. (R. 203, 204, 365, 373, 374).

Additionally, the RFC assessment takes into account the Claimant's testimony concerning back pain, but only to the extent it proved consistent with the objective medical evidence. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Claimant's contention that the ALJ did not consider Claimant's back condition when formulating the RFC merits little discussion as the RFC specifically includes the limitation of "occasional stooping, frequent but not constant overhead reaching with left arm, and sitting and standing at will." (R. 14). Further, the ALJ considered findings of Dr. Mustante who treated Claimant for his back pain and whose notes showed in 2008 that Claimant could return to normal activities and no further treatment was necessary. (R. 15, 354-363). Given the lack of contradicting medical evidence showing continued pain, the ALJ properly relied on such findings.

Although Claimant may disagree with the ultimate determination made by the ALJ, the role of this Court is not to re-weigh conflicting evidence, make credibility determinations or substitute its judgment for that of the ALJ. *Craig*, 76 F.3d at 589. Yet, Claimant is requesting the Court to engage in weighing the evidence and to provide justification for the inclusion of an additional limitation in Claimant's RFC assessment found unwarranted by the ALJ. Pl.'s Mem. at 12. Based on the foregoing, however, this Court finds the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained her findings and her rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

21

## V. The ALJ did not mischaracterize evidence.

Claimant contends the ALJ mischaracterized the medical findings of Dr. Samia, the state agency consultative examiner, and that this mischaracterization led to an "improper assessment and weighing of Dr. Smith's opinion and to [an] erroneous residual functional capacity." Pl.'s Mem. at 11-12. The court disagrees.

Claimant faults the ALJ's description of Dr. Samia's findings which states "[n]o functional limitations were noted at this time." (R. 15). The ALJ's statement is based on Dr. Samia's evaluation of Claimant on March 8, 2010. The report itself does not include the statement used by the ALJ. Rather, the phrase used by the ALJ represents the ALJ's summary of Dr. Samia's findings in the report. Dr. Samia's report provides, in part, as follows:

1.  Sclerosing cholangitis, colitis by history. I would defer to his treating physician regarding the degree of impairment and long-term prognosis.
2.  Back pain and left shoulder pain. The patient is with subjective discomfort, modest range of motion. It does not appear an assistive device is needed for ambulation or balance at this particular time. Again, I would defer to his treating physician regarding the degree of impairment and long-term prognosis.

(R. 312). Claimant contends the ALJ's statement is a mischaracterization because Dr. Samia explicitly defers an opinion on impairment to Claimant's treating physician. Pl.'s Mem. at 11. The court does not find the ALJ's statement of no functional limitations being noted to be a mischaracterization. Despite the fact that Dr. Samia noted in his report that he would defer to the treating physician on matters of impairment, he in fact did not make any functional limitation findings himself. Thus, it is not inaccurate for the ALJ to state that no functional limitations were noted.

Rather, it appears Claimant is asking the court to reweigh the evidence in light of Dr.

22

Samia's impairment deferral in an attempt to bolster Dr. Smith's opinion. Claimant essentially contends the ALJ improperly weighed the evidence in deciding not to give controlling weight to Dr. Smith's May 2011 opinion and in making her RFC finding in light of Dr. Samia's findings. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to sit *de novo* as the adjudicator. *See Mastro*, 270 F.3d at 176. It is not the task of the court to reweigh the evidence and reach its own independent conclusions. *Id.* As discussed above, the ALJ was within her discretion in deciding not to give controlling weight to Dr. Smith's opinion and adequately explained her reasons for not assigning controlling weight. The ALJ did consider Dr. Samia's report and she detailed that report in her opinion. Additionally, Dr. Samia'a report was adequately considered in the RFC determination. For the foregoing reasons, Claimant's mischaracterization argument is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-18] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

23

Submitted, this the 3rd day of December, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge

24